New York County.—Hon. D. C. CALVIN, Surrogate.—
October, 1881.

## HEWITT v. HEWITT.*

*In the matter of the probate of a paper propounded as the last will of* EDWARD HEWITT, *deceased.*

The instrument propounded as decedent's will was an irregular piece of coarse brown paper, measuring ten by seven inches, written partly with a blue, and partly with a black pencil. Upon the first page was a disposing clause, followed, at the foot, by the names of two witnesses. The paper appeared then to have been folded sidewise, thus forming a second page, upon which were written, in the order given, the names of the same two witnesses, another disposing clause, the decedent's signature, a statement of a reason for the dispositions, and the decedent's signature, again. The names of the witnesses could not be made to appear as subscribed at the end of the will, by any system of folding.

*Held,* that the instrument should be refused probate, on inspection, on the ground that the attesting witnesses did not sign their names at the end thereof.

Where a fatal defect is patent upon the face of a paper, offered for probate as a last will, it may be rejected without entering upon formal proof.

The words "at the end of the will," in 2 *R. S.*, 63, § 40, subd. 4, relating to the signatures of attesting witnesses to a will, refer to place, and not to time.

The requirement of the statute, that the witnesses shall sign, *at the end of the will,* is as obligatory as the corresponding provision relating to subscription by the testator.

The doctrine that one requirement may be so complied with, as to include compliance with another, has no application to such a case.

Hitchcock *v.* Thompson, 6 *Hun,* 279,—doubted.

APPLICATION for the probate of a will, by Thomas Hewitt, a legatee therein named ; opposed by Minnie Hewitt, widow of decedent. The document propounded was a coarse piece of brown paper, of irregular shape and

* Subsequently affirmed, at general term, on the Surrogate's opinion.

jagged edges, about ten inches long and seven broad, written partly with a blue, and partly with a black, pencil, claimed to be in the handwriting of the decedent, and reading thus :

"I, Edw. Hewitt bequest to my Brother Thomas ½ of all Patents, the other half to go to my two children Jessie and Harry Hewitt, to" (*the foregoing in blue pencil, the rest in black, as follows :*) "be held in trust of Mr. Hake until my children is of age.

MARY HEWITT, witness,<br>TH. CASSELMANN, witness."

Here ended the first page, when the paper appeared to have been turned over sidewise, and at the top appeared "Mary Hewitt, witness. Th. Casselmann, witness." Under these names, was drawn a pencil line, after which was written the following :

"My other patents which I have applied for to go to my brother Thomas Hewitt.

EDW. HEWITT."

(Then follows :) " my reason for doing this is my wife has been false to me & Broke my heart by not doing right.

EDW. HEWITT."

The names of the witnesses thus appeared to be signed twice, once at the bottom of the first page, and again at the top of the second ; but in each instance, between the provisions disposing of decedent's patents, one-half to his brother, and one-half in trust to Mr. Hake for his children, and the disposition of his patents applied for, to his brother Thomas.

The names of the witnesses could not be made to appear to have been subscribed at the end of the will, by any possible system of folding. Counsel for the contestant, after filing objections to the probate, on the ground, among others, that the witnesses did not sign their names at the end of the will, moved that the instrument be denied probate for that reason, on the inspection of the paper.

Proponent's counsel opposed the motion, on the ground that the proponent was entitled to produce and examine his witnesses, in order to enable him to show the circumstances and manner of execution, and the time when the witnesses signed, and urged that the place of signature was immaterial, if it should appear that they signed after the will had been completely drawn and the decedent had subscribed the same.

J. K. FURLONG, *for proponent.*

TEN EYCK & REMINGTON, *for contestant.*

THE SURROGATE.—As there is no question of the identity of the instrument propounded, I am of the opinion that, if there is a fatal defect, patent upon the paper, which cannot be cured by averment or proof, the court is not required to enter upon a formal proof of the instrument, but should reject it at once; otherwise an instrument without witnesses, or with but one, or which had not been subscribed by the decedent, might engage the valuable time of the court, in order to enable the parties to prove what is patent upon the face of the instrument.

This brings me to the inquiry whether the fourth requirement of 3 *R. S.*, 63, § 38 (6 ed.), that there shall be

at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will, can be dispensed with.    The proponent's counsel cites the case of Hitchcock v. Thompson (6 *Hun*, 279), which held that a will drawn upon one sheet of paper, fastened together at the end, only the first and third pages being written on, the second page being left blank, signed by the testator at the bottom of the third page or end of the will, the attestation clause being placed at the top of the second page, signed by the witnesses, was properly executed, and should have been admitted.    Judge BARNARD, in giving the opinion of the court, said it was a mere question of folding the paper ; that there was no fraud ; that the will was, in point of fact, attested after its execution by the testator, *at the end of the will.*    The attestation of the witnesses was not at the end of the will, and there was no process of folding by which the attestation could be brought at the end of the will.    But, on the contrary, whatever mode of folding might have been adopted, the attestation would invariably appear to be between the first and the second page of the written will, and not at the end of the will, unless the learned judge intended to interpret the end of the will as expressive of the time when it was attested, which is inconceivable.

I see no reason suggested by the statute, why the requirement, that the subscribing witnesses shall sign their names at the end of the will, is less obligatory than that requiring the testator to subscribe at the end of the will.    Although it is possible to suppose that the omission in the first might afford greater opportunities for fraud than the other, for if the signature were at the top or in the middle of the instrument, there would be

afforded a greater opportunity for the fraudulent insertion of other provisions not known to the testator.

But the court has no right to assume that the one requirement is less obligatory than the other, or the omission of it less fatal to the legality of the instrument, and in that case it is clear that the witnesses had no idea what they were to attest, for they appear to have subscribed the first page of the instrument, without any subscription of it by the decedent, and the signatures, as made, afford no evidence that they were not made before the writing of that portion of the will written on the second page, and do not appear to have been made with any reference to the decedent's signature.

Suppose the subscribing witnesses were both deceased, and an effort were made to prove the will by proving the signatures of the subscribing witnesses and the decedent,—in the absence of an attestation clause, there would seem to be no ground for presuming that their signatures were made after the will was executed by the decedent. If such a signing can be held a compliance with the statute, then a signing by the witnesses, at the top or on the margin, or intermediate two clauses of the instrument, would be sufficient.

In Sisters of Charity v. Kelly (67 *N. Y.*, 409), it was held that the expression in the statute, "at the end of the will" meant the end of the instrument as a completed whole, and where the name was written in the body of the instrument, with any material portion following the signature, it was not properly subscribed. In that case, the testator's name appeared in the middle of the clause appointing the executors.

In Baskin v. Baskin (36 *N. Y.*, 416), Mr. Justice

PARKER, after stating the four requirements of the statute for the due execution of a last will and testament, says that none of these requisites can be dispensed with, and without a substantial compliance with them all, the will cannot be admitted to probate.

In Remsen *v.* Brinckerhoff (26 *Wend.*, 331), Chief Justice NELSON, after stating the four requisites, says that it is obvious that any one of these four requisites, in contemplation of the statute, is to be deemed as essential as another; that there must be a concurrence of all, to give validity to the act; and that the omission of either is fatal.

In M'Guire *v.* Kerr (2 *Bradf.*, 244), it was held that the statute, requiring a will to be signed by the testator and the witnesses at the end, demanded that they should agree as to what the end of the will was, and the will was rejected because the testatrix signed in one place, after which executors were appointed by a clause to which the names of the witnesses were signed; after which another provision was written, to which the testatrix put her name, the witnesses and testatrix in no instance coinciding as to where the end of the will was.

Judge BRADFORD says that the testator and the witnesses must all unite in authenticating the instrument at its point of completion.

In Lewis *v.* Lewis (11 *N. Y.*, 220), Mr. Justice ALLEN says that the legislature have made four things essential to the proper execution and attestation of a will, and a want of conformity to any of the requisites will invalidate the instrument as a testament.

It is true that, in the case of Baskin *v.* Baskin, above cited, it was held that the testator, who produced a

paper bearing his personal signature, declared it to be his last will and testament, and requested the witnesses to attest it, acknowledged its subscription within the meaning of the statute, upon the ground that the presentation of the paper to the witnesses for attestation, and publishing it so subscribed as his will, was an unequivocal acknowledgment of the signature thus affixed, and that it was a substantial compliance with the statute prescribing the formalities to be observed in the execution of wills. See, also, Gilbert v. Knox (52 N. Y., 125).

By this is meant that if, in the performance of one requirement, it is so done as to include that prescribed in another, it is substantial and sufficient. But that doctrine has no application to the case under consideration. For the signing by the witnesses, at the end of the will, is an independent provision which is not aided by the performance of all the other requirements. Neither the signing in the presence of the witnesses at the end of the will, by the testator, his acknowledgment of his signature, his publication of the instrument as his last will and testament, his request to the witnesses to sign, nor their signing in his presence, in any way aids in a compliance with the positive requirement that they shall sign their names at the end of the will.

The admission of the will, in Hitchcock v. Thompson, above cited, may perhaps be sustained, though *this* will should be rejected, because the cases are quite dissimilar. But, as the conclusion which I have reached in this case may seem to be at variance with the reasoning of the learned judge in that case, I have deemed it proper to state the authorities upon which the conclusion is based.

I am of the opinion that the instrument propounded should be rejected, for the reason that the attesting witnesses did not sign their names at the end thereof.

Decreed accordingly.