New York County.—Hon. D. G. ROLLINS, Surrogate.— April, 1882.

## Dennett *v.* Taylor.

*In the matter of the paper propounded as the will of* Edwin C. Taylor, *deceased.*

The subscription of a testator, and the signatures of the attesting witnesses, must be " at the end of the will."

In order to incorporate a paper into a will, by reference, the testator must distinctly describe it, and it must be then in existence.

Partial probate cannot be granted, where several writings are propounded as a will, unless the matter rejected appears to have formed no part of the testamentary purpose.

The paper propounded as decedent's will covered the first and second pages of a sheet of paper, the former of which, being partly printed and partly in decedent's handwriting, contained the introduction, a direction to pay debts, an appointment of executors, one dispositive clause followed by a blank of four inches, the in testimonium and attestation, and the signatures of decedent and witnesses. The dispositive clause bequeathed certain amounts "as hereinafter named," without further explanation. On the second page were twenty lines in decedent's handwriting, giving certain legacies to persons and for purposes specified, and disposing of "all the balance" of his assets for the benefit of his ward, without signature. At the time of execution, the subscribing witnesses did not see the writing on the second page, except as indistinctly appearing, through the sheet, upon the first page; and there was no evidence that such writing had then taken its latest form, nor that decedent, in the words "hereinafter named," had reference thereto, nor that the property sought to be bequeathed on the second page was or was not the same as that mentioned on the first. On application for probate, *Held,*

1. That the two pages could not be admitted as a will, the testator and witnesses not having signed "at the end" thereof; and the theory of an incorporation of the second into the first page, by reference, being untenable because, in order to such a result, the testator must distinctly describe an existing paper.

2. That partial probate, to wit, of the first page, could not be granted, it being clear that this page did not express the full purpose of the testator.

The decision in Conboy *v.* Jennings, 1 *T. & C.*, 622,—distinguished.

APPLICATION for the probate of a paper propounded as decedent's will, by Francis F. Taylor, named as executor therein; opposed in behalf of Walker Dennett and Alexander Taylor, infant legatees. The facts appear sufficiently in the opinion.

BUSHE & CLARK, *for proponent.*

GEO. G. DE WITT, JR., *special guardian for contestants.*

JAMES B. SHERIDAN *and* F. G. DOW, *special guardians for infants.*

WILLIAM C. SANGER, *for Eugene E. Oudin.*

THE SURROGATE.—An instrument purporting to be the

will of Edwin C. Taylor has been offered for probate. It covers the first and second pages of a sheet of paper. The first page reads as follows:

"In the name of God, amen. I, Edwin C. Taylor, of the city and county of New York, being of sound and disposing mind and memory, and considering the uncertainty of this life, do make, publish and declare this to be my last will and testament, as follows : First. After my lawful debts are paid, I give the amount of my paid-up policy with the Mutual Life Insurance Company and the sum payable from the Jewelers' League as hereinafter named. I hereby appoint Charles E. Morris and Francis F. Taylor to be executors of this my last will and testament, hereby revoking all former wills. In witness whereof, I have hereunto subscribed my name, and affixed my seal, the ninth day of November, in the year of our Lord one thousand eight hundred and eighty. EDWIN C. TAYLOR. (E. C. T.)

" Subscribed by Edwin C. Taylor, the testator named in the foregoing will, in the presence of each of us, and at the time of making such subscription the above instrument was declared by the said testator to be his last will and testament, and each of us, at the request of said testator and in his presence and in the presence of each other, sign our names as witnesses thereto, at the end of the will. HAYWARD S. COZZENS, residing 224 East Fifteenth street. JOHN TAYLOR, residing Newark, N. J."

That portion of the paper propounded as decedent's will, which has just been quoted, is partly in print, and partly in his own handwriting. The introduction, the clause relating to the appointment of executors, and the testimonium and attestation clauses, are in print. After

the words "hereinafter named," and in the place where the dispositive provisions might be expected to appear, there is a space of about four inches which is utterly blank.

The printed matter following this blank space, together with the signatures of the decedent and the subscribing witnesses, occupies the remainder of the page.

Upon the reverse side, commencing at the top and continuing for twenty lines, there appears in the testator's handwriting the following :

" I desire that a demand note for one hundred dollars in the hands of Mr. C. T. Cook, of Messrs. Tiffany & Co., be paid, and that one hundred and twenty-five dollars be paid to Mr. M. E. Harris, to redeem my watch and jewelry. I wish the sum of two hundred dollars expended in enclosing and otherwise improving the lot in Greenwood cemetery, where my mother and father are buried, and where there is room for my body. I give one hundred dollars each to M. C. E. Morris and Francis F. Taylor, to buy them souvenirs. All the balance of my assets I wish paid into the hands of my executors, for the benefit of my ward, Alexander Taylor, if they will accept the charge ; if not, the money may be paid to the said Alexander Taylor, who will, from the date of receiving it, assume charge of his own affairs. My piano and stool I leave to Walker Dennett, and all my other personal effects to my ward Alexander Taylor."

Upon the foregoing facts two questions arise : 1st. Are both the first and second pages entitled to probate, as together constituting Mr. Taylor's will ? 2d. If the second page must be rejected, has the first a just claim to be upheld ?

First. It is provided by our Wills act (2 *R. S.*, 63, § 40; 3 Banks' 7 ed., 2285), that both the "subscribing" by the testator and the "signing" by the witnesses must be "at the end of the will."

Our statutory requirements in this respect are more stringent than those of other American States, with very few exceptions. In most of them, the signatures have equal force and effect, whether they appear in one part of the will or another.

But it is one of the essential formalities, in the execution of a will in this State, that the signatures both of the testator and the attestors be placed "at the end." Now, where is the "end" of the instrument here offered for probate? Surely not where the signatures appear, unless one can be said to arrive at the end of a thing, before he gets through with it. The end has come when there is naught beyond, and not till then. The very ground, indeed, upon which it is urged, that the second page of this paper should be admitted to probate, is that the first page disclosed only in part, and in insignificant part, the purpose of the testator. Now, it is upon that page that the signature appears. If it is there that the will ends, then all that follows goes for naught; on the other hand, the whole instrument manifestly goes for naught, if it ends on the second page, for there it is not signed as the law demands.

That I have not too strictly construed the terms of this statute appears from an examination of the authorities. There are few American cases which throw light upon the matter, but the English decisions are numerous and positive.

The act of 1 Victoria (c. 26), provided that a will

should "be signed at the foot or end thereof by the testator." This act continued in force until it was amended by the act of 15 & 16 Victoria, ch. 24. It would be profitless to specify here the nature and extent of the changes made by the statute last named, but those changes were so many and so sweeping that the decisions of English courts, upon cases arising since 1852, have little, if any direct bearing upon the matter under discussion. On the other hand, the decisions for fifteen years prior to that date are much to the purpose, as the language of our statute is substantially the same as that of the English Wills act before its amendment.

The rejection of the second page of the paper here propounded is fully supported by : In Goods of Birkett (6 *Notes of Cases*, 597); In Goods of Parslow (5 *Id.*, 112); Willis v. Lowe (5 *Id.*, 428); In Goods of Tookey (5 *Id.*, 386); In Goods of Martin (2 *Id.*, 385); In Goods of Howell (2 *Curteis*, 342); In Goods of Milward (1 *Id.*, 912); Smee v. Bryer (6 *Notes of Cases*, 20, 406, and page 41 of supplement).

In the case last cited, the court (privy council) says : " The question is whether this will is signed by the testatrix at the foot or end, according to the true intent and meaning of the statute. Now, forms are required for the purpose of preventing spurious wills. It may happen, even frequently, that genuine wills—*i. e.*, wills truly expressing the intention of the testators—are made without observation of the required forms ; and whenever that happens, the genuine intention is frustrated by the act of the legislature, of which the general object is to give effect to the intention. The courts must consider that the legislature, having regard to all probable cir-

cumstances, has thought it best, and has therefore de-
termined, to run the risk of frustrating the intention
sometimes, in preference to the risk of giving effect to
or facilitating the formation of spurious wills by the
absence of forms. . . . . When questions arise
whether the prescribed forms have been observed or not,
and such cases must frequently occur, it seems to be the
duty of the courts to construe the enactment according to
the plain rules of common sense : not to strain the sim-
ple meaning of the words, or to be astute in giving special
constructions on particular occasions, for the purpose of
evading the application of the rule, where its application
may seem to us to frustrate or defeat the intention of
testators in particular cases."

In Owens *v.* Bennett (5 *Harr.* [*Del.*], 367), after the
testator's signature appeared : "N. B. I give and be-
queath to Aaron Owens all my personal property." This
was written by the express directions of the testator, at
the same time as the main part of the will, and before
the instrument was executed. But the court held that
the part following the *nota bene* must be rejected, and
commented upon the mischief which would ensue, if the
signatures of the testator and the subscribing witnesses
should be suffered to cover such parts of the document
as were below the signature. To the same effect are
Glancy *v.* Glancy (17 *Ohio St.*, 134) ; Hays *v.* Harden (6
*Penn. St.*, 409) ; M'Guire *v.* Kerr (2 *Bradf.*, 244) ; Sisters
of Charity *v.* Kelly (67 *N. Y.*, 409).

In the case last cited, the testator had signed his
name in the middle of that clause in his will which
named his executors. This immediately preceded the
testimonium clause, and came after all the dispositive

portions of the instrument. The court of appeals held (reversing the general term of the supreme court), that the execution was not in accordance with the statute, because the signature was not at the end of the will. See, also, In the Goods of Dearle (39 *L. T. Rep.*, 93), and Sweetland v. Sweetland (4 *Swa. & Trist.*, 6).

It has been urged, by counsel for the proponent, that the writing on the second page can be treated as if it were a separate and distinct paper, to which the first page makes reference, and which is thereby incorporated into the will.

This position, however, is untenable for several reasons : 1st. Because the statutory requirements already discussed cannot be evaded by so simple a device. 2d. It has been repeatedly held that, if a testator refers to another paper, he must, in order to make such paper part of his will, distinctly describe it, and it must be then in existence (Sisters of Charity v. Kelly, *supra;* Chambers v. McDaniel, 6 *Ired. Law*, 226 ; Pollock v. Glassell, 2 *Gratt.*, 439 ; Phelps v. Robbins, 40 *Conn.*, 271). But we are entirely in the dark, as to whether this writing had taken the precise form which it now has, at the time the witnesses subscribed their names. They did not see it, except as it was partly and indistinctly shown upon the opposite side of the sheet. 3d. And besides, it is by no means clear that any of the matter upon the second page is what the testator had in mind, when he used the words "hereinafter named," upon page first.

It will be remembered that the subject of the gift, referred to at the outset, is the amount of the decedent's paid-up policy with the Mutual Life Insurance Com-

pany, and the sum payable by the Jewelers' League. Now it does not appear, on the face of this paper, or by any extrinsic evidence, whether the property sought to be bequeathed is or is not the same as that referred to on the first page.

Second. It is claimed that, even if this paper is not entitled to probate as a whole, the first page may be taken as the will of the testator. I am persuaded, however, that the instrument must be utterly rejected. The subscribing witnesses say that, at the time of its execution, there was writing upon its second page. It is plain, therefore, that the portion on the first page did not express the entire will of the testator. I have been able to find no case in which, under circumstances like these, partial probate has been granted. In the case of Glancy v. Glancy (*supra*), it clearly appeared that the addition was made before the execution ; yet the court rejected the entire will, upon the ground that the part preceding the signature did not express the full purpose of the testator.

In the case of Hays v. Harden (*supra*), the court says : " The argument that all which precedes the signature, having once been formally executed, should remain stable and yet the additional line should be rejected, is plausible but unsound. It is evident that the testator considered the whole to be one will. We have no reason to believe he would wish any part to stand, if the whole did not. It is better that an informal addition should operate as a statutory revocation of the whole, than that a plain injunction should be frittered away by exceptions."

In the case of the Sisters of Charity v. Kelly (*supra*),

it was held that not only should the part following the signature be rejected as not properly executed, but that such improper subscription invalidated the entire instrument.

The case of Conboy *v.* Jennings (1 *T. & C.*, 622), is not in conflict with these decisions. Two pages were there held to constitute a will, to the exclusion of a third page, upon which something had been written by the testator before the instrument was executed. The court found that the matter upon the third page was not intended by the testator to form any part of his will, but that according to his understanding and that of the witnesses, the instrument came to an end on the second page.

I have found no other case that furnishes even an apparent exception to the rule which would shut out this entire instrument.

The paper propounded as the last will and testament of Edwin C. Taylor must therefore be denied probate altogether.