KINGS COUNTY.—HON. ABRAHAM LOTT, SURRO-
GATE.—February, 1888.

MATTER OF VOORHEES.

*In the matter of the probate of the will of* JOHN A.
VOORHEES, *deceased.*

The fact that an interlineation, in the body of a will, is not noted at the foot of the instrument, does not exclude the theory of its having been made before execution, where other reasons exist for reaching that conclusion.

Among interlineations in wills, are to be distinguished those which supply a blank in the sense, and those which indicate a change of intention on the part of the testator. The latter, only, are subject to the strict presumption of having been effected after execution.

The will of testator, who died leaving, him surviving, two sons and three daughters, after certain bequests to grandchildren, provided: "I give unto my son Abraham and his heirs one equal fifth share of my real and personal estate; also Johana Jewell and heirs wife of Ditmas Jewell one fifth share of my real and personal also my son Wm. K. Voorhees and his heirs, one fifth share of my real and personal estate I give unto my daughter ^Adriana and her heirs one fifth of my real and personal estate; also Anna Maria Hegeman, wife of John J. Hegeman and heirs one fifth share real and personal estate." The interlineation was not noted at the foot of the will, which was in the handwriting of testator.—

*Held*, that the will should be admitted to probate, with the interlineation as a constituent part thereof.

CONTEST as to true reading of decedent's will, on application for probate. The facts are stated in the opinion.

WM. J. GAYNOR, *for executors.*

EDGAR BERGEN, *for contestant.*

JOHN. H. KEMBLE, *special guardian.*

THE SURROGATE.—The testator had two sons and three daughters and by his will he devised one fifth of his estate to each them, naming them successively:

In the clause making provision for his daughter Adriana, her name is interlined, and it is claimed on behalf of one of the next of kin that the presumption of law is that this interlineation was made after the execution of the will. The testator having named two of his daughters in his will, it is a fair presumption that in the clause in question he intended to name the remaining daughter, at any rate he intended to name one of his daughters, and finding he had not done so, he interlined the name. The entire will, including the interlineation, is in the handwriting of the testator; the whole appears to have been written at the same time and with the same pen and ink. In supplying this name the testator did not revoke any part of his will or make any new devise or bequest, but simply supplied a blank or mere clerical omission. This should not be confounded with the case of interlineations which revoke some part of a will or add new and independent provisions.

In Jarman on Wills (vol. 1, p. 144), it is said: "Where a will has been drawn with blanks left for the names of legatees and the amounts of the legacies, which blanks are afterwards filled up, but there is no evidence to show when, the presumption is the blanks were filled in before execution, and although there may have been no blanks but the names of the legatees are found interlined, yet if the interlineation only supplies a blank in the sense, and appears to have been written with the same ink and at the same

time as the rest of the will, the court will conclude that it was written before execution."

As I have said, the testator had three daughters; then his reference to a daughter without naming her left a blank "in the sense" before mentioned, and so the presumption is that the blank was filled up before the execution of the will.

I have fully considered the cases cited for the contestant. In Wetmore v. Carryl (5 *Redf.*, 544), a legacy of $5,000 was changed to one of $2,000, and it is sufficient to say that in each case there was by the alteration or interlineation a change of intention on the part of the testator indicated.

In Crossman v. Crossman (95 *N. Y.*, 145, 153), Judge EARL, in delivering the opinion of the court, said: "Here, from all the circumstances, it was at least for the Surrogate to determine whether this interlineation was made before or after execution, and in making that determination he was bound to consider the handwriting, the color of the ink, the manner of the interlineation, the fact that it was noted at the bottom of the instrument, and that it was made to correspond with the duplicate. Where an interlineation or erasure in a will is fair upon its face and it is entirely unexplained, there being no circumstance whatever to cast suspicion upon it, it would not be proper for any court to hold that the alteration was made after execution."

It is true there was no note of the interlineation in the instrument in question, but I do not think the court in the case last cited considered that an essential circumstance, other reasons existing for reaching the

same conclusion. That the interlineation is fair upon the face of the will I do not doubt. It was in the handwriting of the testator and rendered effective a part of his will containing the only provision for one of his children.

The will must be admitted to probate as now written.